No. 43,574

In the Matter of the Application of NORMAN D. MORTIMER for a Writ of Habeas Corpus, *Appellant*, v. DAYTON EVANS, as Sheriff of Cherokee County, Kansas (successor to Carroll Lawson), *Appellee.*

(386 P. 2d 261)

Opinion filed November 2, 1963.

*Max D. Hall*, of Anthony, and *R. L. White*, of Pittsburg, argued the cause, and *R. L. Letton* and *J. Curtis Nettels*, of Pittsburg, were with them on the briefs of the appellant.

*James G. Shaw*, county attorney, and *Merle Duncan, Jr.*, assistant county attorney, argued the cause and were on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is a habeas corpus proceeding. Norman D. Mortimer, petitioner (appellant), was accused of the crime of manslaughter in the fourth degree (G. S. 1949, 21-420).

The complaint alleged that on the day specified the petitioner

unlawfully, feloniously, willfully, and with culpable negligence drove and operated his Chevrolet bus on the public highway and failed to yield the right of way to the vehicle of Louise Shearer; that he drove his vehicle in a reckless manner as to indicate a willful and wanton disregard for the safety of persons and property; and that he failed to keep his vehicle in the proper lane of traffic and drove the Chevrolet bus across the center line to the left side of the highway, striking the automobile driven by Louise Shearer, in which automobile Karen L. Shearer was a passenger, and by reason thereof Karen Shearer received bodily injuries that caused her death.

Upon the filing of the complaint the petitioner was arrested and brought before a justice of the peace for preliminary examination. At the preliminary examination the justice of the peace found that the offense charged had been committed and that there was probable cause to believe the petitioner was guilty of the offense charged. The petitioner was bound over to the district court for trial.

Thereafter the habeas corpus proceeding involved in this appeal was commenced in the district court of Cherokee county. The court, after hearing the application and examining the files, found the petitioner was not unlawfully restrained of his liberty, and remanded petitioner to the custody of the sheriff. From an order overruling petitioner's post trial motions he appeals.

The contention of the petitioner can be reduced to the question of whether or not there was sufficient evidence produced at the preliminary examination to support the finding that a crime had been committed. The essential factual element we are here concerned with involves whether or not the evidence established the elements of the crime, i. e., how and when did Karen L. Shearer, the deceased, receive her fatal injuries.

The evidence in the case reveals that prior to the accident the bus being driven by the petitioner was swerving, that it would gradually go over past the yellow line to the center, and twice both dual wheels went off the pavement onto the shoulder; that as the bus neared a curve a station wagon, being driven by Mrs. Shearer, was coming around the curve from the opposite direction, in its own lane of traffic, and just as it was making the curve, the bus, traveling at a speed of forty to forty-five miles an hour, instead of negotiating the curve, went straight across and to the op-

posite side of the highway and struck the station wagon; that the witness John Hurley testified that the parties involved in the accident were the driver of the bus and the lady and girl in the station wagon; that he called an ambulance, then came back to the scene of the accident, and when he returned, the lady was lying on the ground by the station wagon and was asking about her daughter,— "take care of my daughter"—and then he looked into the car and saw her daughter Karen lying on the seat; that he helped load the girl into the ambulance.

Dr. C. B. Smith testified it was his judgment Karen was dead on arrival at the hospital. Examination revealed the right carotid artery had been completely severed, along with the right jugular vein, and that Karen had sustained numerous lacerations, contusions and fractures.

While we concede that here perhaps the best use was not made of the evidence of witnesses undoubtedly available, still it is the opinion of the court that the evidence adduced at the preliminary examination was sufficient to establish that Karen's death resulted by reason of the automobile collision under the conditions as set forth in the complaint.

At the outset it may be stated a preliminary examination is not a trial of a defendant's guilt; it is rather an inquiry whether the defendant should be held for trial. Its principal purpose is the determination of whether a crime has been committed and whether there is a probability that the defendant committed the crime. Its main object is to apprise the accused of the nature of the crime or crimes charged against him, and to apprise him partially, at least, of the sort of evidence he will have to combat when he is subjected to formal prosecution in the district court. (*State v. Robertson,* 190 Kan. 771, 378 P. 2d 37; *In re Merrifield,* 175 Kan. 889, 267 P. 2d 465; *State v. Willhite,* 161 Kan. 113, 116, 117, 166 P. 2d 562; *McIntyre v. Sands,* 128 Kan. 521, 278 Pac. 761; *King v. McKnight,* 120 Kan. 692, 695, 245 Pac. 105.)

There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty.

(*State v. Pfeifer*, 109 Kan. 232, 233, 198 Pac. 927; *In re Danton*, 108 Kan. 451, 195 Pac. 981.)

In the case of *State v. Powell*, 120 Kan. 772, 777, 245 Pac. 128, Justice Burch, in speaking for this court, stated:

"Procedure by preliminary examination takes the place of procedure of grand jury, but corresponds to procedure by grand jury to this extent only: It is a method of determining whether a suspect should be held for trial, and serves to prevent escape of the guilty and detention of the innocent. (*State v. Bailey*, 32 Kan. 83, 3 Pac. 769.) The two methods of procedure differ in these important respects: Preliminary examination affords, and is designed to afford, general information to the person held to answer respecting what he must meet. It does not definitely fix the form of the charge to which he must plead."

It must be remembered that these preliminary proceedings are generally had before justices of the peace, officers not learned in the law, and if the same fullness and precision, the same precautions against all the contingencies of the testimony, were required there as in the information or indictment, justice often would be delayed and defeated. (*State v. Spaulding*, 24 Kan. 1; *State v. Rangel*, 169 Kan. 194, 196, 217 P. 2d 1063.)

In view of what has been said, the judgment of the trial court is affirmed.