No. 57,246

STATE OF KANSAS, *Appellant,* v. THOMAS DEAN GREEN, *Appellee.*
(697 P.2d 1305)

Opinion filed April 5, 1985.

*Mark Knight,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Jerry L. Harper,* district attorney, and *Steve Hopkins,* legal intern, were on the brief for the appellant.

*Craig W. Huntley,* of Hamilton, Huntley, & McRorey, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the prosecution from an order of the court dismissing the complaint and discharging the defendant at the close of the preliminary hearing. The defendant, Thomas Dean Green, was charged with one count of theft in violation of K.S.A. 21-3701.

The sole issue on appeal is whether the State presented sufficient evidence to have the defendant bound over for trial.

The facts disclosed at the preliminary examination, concisely stated, were as follows: Around midnight on the evening of January 24, 1984, the defendant and his two friends—Dwight Thuro and Jeff McDaniels—drove in Thuro's car from their home in Wellsville, Kansas, to Lawrence, Kansas, for the purpose of "just driving around." They drove by Turner Chevrolet once, and then went back and stopped there for the purpose of taking some new wheels and tires for Thuro's car. There was no clear evidence presented at the preliminary hearing that the defendant was involved in the decision to commit the theft. McDaniels testified that he thought Thuro and the defendant might have discussed the idea during the ride to Lawrence, but he was uncertain and admitted he couldn't hear much as he was sitting in the back seat. Thuro testified that he made the decision to stop at Turner's after driving by and seeing the new tires. He said nothing about discussing the idea on the way to Lawrence.

Upon arriving at Turner's, Thuro and McDaniels proceeded to remove the tires and wheels from a Chevrolet pickup truck. Meanwhile, the defendant took Thuro's car and left because he wanted nothing to do with the theft. Both Thuro and McDaniels testified that the defendant had nothing to do with taking the tires. The defendant later returned to pick up his companions. Thuro and McDaniels loaded the tires into the trunk of Thuro's car. McDaniels was unsure whether it was the defendant or Thuro who unlocked the trunk, but Thuro remembered unlocking it himself. The defendant did not help load the tires.

Later, after leaving the scene, the car was stopped for minor traffic violations at which time the tires were discovered. The tires were worth over $100 making the theft a Class D felony. See K.S.A. 21-3701. Thuro pled guilty to the charges and McDaniels entered into a diversion agreement with the State, prior to Green's preliminary hearing.

At the close of the hearing, the court said:

"The real issue here is not whether a crime was committed but whether there's probable cause to believe the defendant committed the crime. When there are two different theories presented, the Court is to allow that matter to go to the trier of fact.

"Here, the State presented two witnesses who both indicated through their testimony that Mr. Green had nothing to do with planning the matter, nor was he involved in it other than being a tag-along or a spectator, basically.

"Passive observations of a crime when the crime is being committed is not

alone enough to bind the defendant over on an aiding and abetting charge, nor is it enough to convict him of that charge."

. . . .

"The Court finds that the State has presented insufficient evidence to show probable cause. . . ."

The nature and purpose of the preliminary examination was set out in *State v. Jones,* 233 Kan. 170, 660 P.2d 965 (1983), and reiterated in *State v. Huff,* 235 Kan. 637, 639, 681 P.2d 656 (1984), as follows:

"If from the evidence it appears to the magistrate that a crime has been committed and there is probable cause to believe the defendant committed a felony, the magistrate binds the defendant over for trial. . . .

"A preliminary examination differs from a trial. This court stated in *In re Mortimer,* 192 Kan. 164, 166, 386 P.2d 261 (1963):

" 'There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty.' " 233 Kan. at 172-73.

Additionally, in *State v. Zimmerman* & Schmidt, 233 Kan. 151, 158, 660 P.2d 960 (1983), we stated:

"It is a well-established principle of law that it is the prerogative of the jury to determine the credibility of the witnesses, the weight to be given the evidence, and to draw all reasonable inferences from the evidence. *State v. Fenton,* 228 Kan. 658, 666, 620 P.2d 813 (1980). Where the evidence tends to disclose that the offense charged was committed and the defendant committed it, the question is one for the jury to decide, even though the evidence is weak. *State v. Townsend,* 201 Kan. 122, Syl. ¶ 3, 439 P.2d 70 (1968)."

Probable cause was defined in *State v. Huff,* 235 Kan. at 640, quoting *Coleman v. Burnett,* 447 F.2d 1187, 1202 (D.C. Cir. 1973), as:

" 'Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. Proof beyond a reasonable doubt, on the other hand, connotes evidence strong enough to create an abiding conviction of guilt to a moral certainty. The gap between these two concepts is broad. A magistrate may become satisfied about probable cause on much less than he would need to be convinced. Since he does not sit to pass on guilt or innocence, he could legitimately find probable cause while personally entertaining some reservations. By the same token, a showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause.' "

The question before the trial judge—and now before this court —is whether the circumstances disclosed by the evidence presented were sufficiently strong in themselves to warrant a person of ordinary prudence and caution in the belief that the defendant aided and abetted Thuro and McDaniels in the commission of the theft.

In their argument, the State relies on two recent Kansas cases: *State v. Wilson & Wentworth*, 221 Kan. 359, 559 P.2d 374 (1977), and *State v. Burton*, 235 Kan. 472, 681 P.2d 646 (1984). Both of these cases involved a "wheel man" who was held to have intentionally aided and abetted in the commission of the crime. The "aiding and abetting" rule was stated in *Burton* as follows:

"K.S.A. 21-3205(1) provides a person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime. It is the rule in this state that mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. See *State v. Williams*, 229 Kan. [646, 661, 630 P.2d 694 (1981)]; *State v. Payton*, 229 Kan. 106, 111, 622 P.2d 651 (1981); *State v. McDaniel & Owens*, 228 Kan. 172, 178, 612 P.2d 1231 (1980); *State v. Wilson & Wentworth*, 221 Kan. at 367; *State v. Edwards*, 209 Kan. 681, 686, 498 P.2d 48 (1972)." 235 Kan. at 477.

Based on the evidence presented at the preliminary hearing, we find that the defendant was nothing more than a "mere associate" with the principals. There was no evidence, not even circumstantial, to indicate he was "willfully furthering the success of the venture." Both of the State's witnesses testified that they believed the defendant wanted nothing to do with the theft.

Therefore, we affirm the trial court's finding that there was insufficient evidence to establish probable cause that the defendant committed the crime charged.

The judgment of the lower court is affirmed.

MILLER, J., dissenting:

The majority in this case, in my opinion, has failed to draw proper and reasonable inferences from the evidence, has ignored some of the evidence favorable to the State, and has taken as true that evidence adverse to the State. It has therefore reached an erroneous conclusion.

McDaniels, Thuro and Green, at midnight, drove from Wells-

ville to Lawrence for the purpose of "just driving around." They drove by Turner Chevrolet once, then they went back and stopped *for the purpose of taking some wheels and tires* for Thuro's car. McDaniels and Thuro got out of the car for the purpose of removing the tires and wheels from a vehicle on the car lot. Green drove off, knowing what the other two were up to, and knowing that he was to come back to pick up the other men *and the stolen tires.* In my judgment, Green actively assisted in the theft in two ways: First, he drove the car *away* from the crime scene, thus keeping that vehicle from being parked where law enforcement officers and the public could see it while his confederates were removing the wheels and tires from a new truck on the dealer's lot. And, second, he returned at an appropriate time to pick up McDaniels and Thuro—*and the stolen goods.* Had Green not driven the car back, McDaniels and Thuro would have had no way to take the tires and wheels away.

I do not believe that we are required to accept as the truth the testimony of McDaniels, Thuro and Green that Green wanted nothing to do or had nothing to do with the theft, particularly when the facts show his active help, aid and cooperation. Had Green walked away when the car first stopped at the Chevrolet dealership, or had he not returned when he was driving around in the car, his actions might have shown that he wanted nothing to do with the theft. What he actually did, however, demonstrates his intention more clearly than his words. This court is accepting *the testimony* as gospel, and is ignoring *the facts.*

In my judgment, Green should have been bound over for trial. His guilt or innocence should be left to a jury and not determined by a magistrate or this court.

MCFARLAND and HERD, JJ., join the foregoing dissent.