No. 65,944

STATE OF KANSAS, *Appellant,* v. TERRY L. STARKS and RICKY L. CASEY, *Appellees.*

(820 P.2d 1243)

Opinion filed October 25, 1991.

*Keith E. Schroeder,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Richard J. Rome,* of Hutchinson, argued the cause and was on the brief for appellee Terry L. Starks.

*Kerry J. Granger,* of Hutchinson, argued the cause and was on the brief for appellee Ricky L. Casey.

The opinion of the court was delivered by

SIX, J.: This criminal case arises from a "reverse sting" drug operation. The case concerns the determination of probable cause during a preliminary hearing.

The State appeals the preliminary hearing order of dismissal. Our jurisdiction is under K.S.A. 22-3602(b)(1).

The trial court, at the conclusion of the preliminary hearing, dismissed the charges against defendant Terry L. Starks and Ricky L. Casey for possession of marijuana with intent to sell within 1,000 feet of an elementary or secondary school (K.S.A. 1990 Supp. 65-4127b[e]) and against Starks for conspiracy to sell marijuana (K.S.A. 21-3302 and K.S.A. 1990 Supp 65-4127b).

We conduct a de novo review of the evidence when considering the trial court's preliminary hearing probable cause finding. See *State v. Green*, 237 Kan. 146, 149, 697 P.2d 1305 (1985).

We disagree with the disposition of the intent to sell charge. We agree that the dismissal of the conspiracy charge against Starks was proper.

## Facts

Starks, Casey, and Jon A. Heter were charged with possession of marijuana with intent to sell within 1,000 feet of an elementary or secondary school (count I) and conspiracy to sell marijuana (count II). Their arrests were the result of a "reverse sting" operation conducted by the Reno County Drug Enforcement Unit and the Kansas Bureau of Investigation (KBI). A reverse sting occurs when law enforcement officials sell drugs to individuals who seek to purchase a large quantity for resale. Once the drugs are purchased from the undercover agent, the purchasers are arrested for drug possession, often with intent to sell.

The reverse sting, in the present case, began when a confidential informant told a sheriff's detective that Heter wanted to purchase a large quantity of marijuana. The KBI agreed to supply the marijuana. Special Agent Atteberry was sent to Hutchinson to act as an undercover agent.

Atteberry and a confidential informant arranged a meeting with Heter at a Hutchinson motel. According to Atteberry, Heter and a drug connection originally planned to purchase five kilos of marijuana for the price of a quarter pound of cocaine and $1,500. Heter told Atteberry that he did not know if the connection could

obtain the cocaine. Heter agreed with Atteberry to buy five kilos of marijuana for $7,500 ($1,500 per kilo). Heter then left to show the connection a sample of the marijuana, stating he would return in 15 minutes with the money to complete the transaction. He did not return. Atteberry later learned that Heter believed that there were undercover police around the motel.

Atteberry met with Heter at Heter's residence the following day. They agreed to complete the transaction that evening at the residence, which was located 96 feet from Liberty Middle School.

### Atteberry's Testimony

The State relied heavily on Atteberry's testimony. Atteberry testified that Heter stated the connection did not have a driver's license; consequently, another individual would drive the connection to Heter's residence. According to Heter, a vehicle would pull all the way to the back of a neighbor's driveway on the east and the connection would bring $9,000 to exchange for the marijuana. The connection did not want to meet Atteberry.

The complex arrangements among Heter, the connection, and the driver were related by Atteberry. Heter planned on paying Atteberry $7,500 for five kilos of marijuana; however, the connection was told the price was $9,000. Heter wanted Atteberry to return $1,500 to him after the connection left. Heter and his connection intended to deceive the driver regarding the quantity of marijuana purchased. Atteberry testified:

"Earlier, one of our conversations that Mr. Heter asked how much five kilos of marijuana weighed, and I replied eleven pounds. He believed it to be ten pounds. His deal with his connection was for ten pounds of marijuana for $9,000, so his intentions, what he stated was that he was going to cut one of the bricks in half and keep the one pound and him and his connection was going to meet later and split that one pound, but the connection did not want the driver of the vehicle to know that they were splitting the one pound up."

Atteberry also related Heter's statements regarding the driver's involvement:

"He stated that, that as I stated earlier, that Heter replied that he was charging his buddy a little bit more and that they're in it together on this, the driver and the connection. He says, I'm trying to make a little off it, and he's trying to make a little off it, 'cause he stated he was selling, Heter was selling the marijuana to his connection for $9,000, and at that time the connection was selling some of this marijuana to the driver of the car."

Atteberry testified that: (1) Heter stated his connection was leaving for Texas the following day to sell the marijuana; (2) Heter intended to sell some of the marijuana to make money to fix up his car; and (3) marijuana was currently selling for $60 per quarter ounce or $200 per ounce in the Hutchinson area.

### The Reverse Sting

While Atteberry, Heter, and the informant waited for the connection to arrive, Atteberry brought in five kilos of marijuana. Heter picked out one of the kilos, cut it in half, and placed one half kilo under his chair. The remaining four and one-half kilos were placed next to the chair.

A brown Maverick, announced by its noisy muffler, pulled into the neighbor's driveway on the east side of Heter's residence. Heter went to the rear of the residence and returned to the living room carrying a large wad of money clutched with both fists. Heter and Atteberry began counting the money. The $9,000 cash pile had a strong odor of marijuana.

Law enforcement officers, listening to the conversation over the informant's body transmitter, moved in when they heard the money being counted. Heter was in the living room. A KBI agent testified that he observed a subject, identified as Casey, attempt to exit the back door of the residence. The agent illuminated Casey with a flashlight and ordered him into the house. Casey ran to the basement. Later, Casey informed the police officers that he was told to go to the basement and that he did not know what was going on. Casey had no driver's license.

Starks was slumped down low behind the wheel in the Maverick when apprehended.

After being *Mirandized,* Heter agreed to talk to the police. According to police, Heter stated that he had spoken with Casey about the $9,000 and about buying the five kilos of marijuana. Casey came to Heter's residence, brought $9,000, and the transaction took place. Heter claimed he was just the "middle man."

Starks, after being *Mirandized,* also agreed to talk to the police. According to police, Starks stated he (1) had no knowledge of any drug transaction; (2) was Casey's friend; (3) had been called by Casey and asked for a ride; (4) picked up Casey and took him

to Heter's residence at Casey's direction; (5) did not know Heter; and (6) did not notice Casey carry anything into the residence.

Heter, Casey, and Starks did not testify at the preliminary hearing. Neither Casey's nor Starks' names were mentioned by Heter before the arrest.

The State admitted that neither Casey nor Starks actually possessed the marijuana. The State argued that Casey and Starks aided and abetted Heter's possession of marijuana with intent to sell and were criminally responsible under K.S.A. 1990 Supp. 21-3205.

The trial court bound Heter over for trial on both count I (possession with intent to sell) and count II (conspiracy to sell). Casey was bound over for trial on count II. The trial court dismissed count I against Casey and counts I and II against Starks. The State then dismissed count II against Casey.

## Probable Cause

If, from the evidence presented at the preliminary hearing, it appears that a crime has been committed and there is probable cause to believe the defendant committed the crime, the magistrate shall bind the defendant over for trial. K.S.A. 22-2902(3). See *State v. Burrell,* 237 Kan. 303, 305, 699 P.2d 499 (1985). "The evidence need not prove guilt beyond a reasonable doubt, only probable cause. The trial court must draw the inferences favorable to the prosecution from the evidence presented at the preliminary examination." *State v. Sherry,* 233 Kan. 920, 935, 667 P.2d 367 (1983). "Probable cause at a preliminary hearing signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *State v. Puckett,* 240 Kan. 393, Syl. ¶ 1, 729 P.2d 458 (1986).

## Count I—Possession of Marijuana With Intent to Sell

The State argues that the trial court erred when it found insufficient evidence to establish probable cause that Starks and Casey aided and abetted Heter in possessing the marijuana with intent to sell.

Starks argues that he did not know Heter and did not have any idea of the transaction among Heter, Casey, and Atteberry.

Casey urges us to adopt the trial court's reasoning, *i.e.,* the evidence regarding Starks' and Casey's involvement supports Heter's purpose in possessing the marijuana and not the State's theory of aiding and abetting.

The evidence presented at the preliminary hearing was sufficient to establish probable cause that Starks and Casey aided and abetted Heter in possessing the marijuana with intent to sell within 1,000 feet of an elementary or secondary school.

The distance of 96 feet from Heter's residence to Liberty Middle School is not contested.

K.S.A. 1990 Supp. 21-3205(1) provides that a person is criminally responsible for a crime committed by another if the person charged intentionally aids, abets, advises, hires, counsels, or procures the other to commit the crime. Mere association with the person who commits the crime or mere presence in the vicinity is insufficient to establish guilt as an aider and abettor. However, when a person knowingly associates with an unlawful venture and participates in a way which indicates the person is willfully furthering the success of the venture, there is sufficient evidence of guilt to go to the jury. *State v. Green,* 237 Kan. 146, Syl. ¶ 4.

Starks stated to the police officer that he: (1) simply gave Casey a ride to Heter's residence; (2) did not know Casey and Heter were conducting a drug transaction; and (3) did not see Casey carry anything into the residence.

Casey stated to police that he was told to go down in the basement and that he did not know what was going on.

In contrast, Atteberry testified that Heter told him the driver and the connection were "in it together." According to Heter, Casey planned to sell some of the marijuana to Starks. Casey and Heter did not want Starks to know that they were purchasing 11 pounds rather than 10 pounds. Atteberry also testified that Casey brought the money into Heter's house in a large wad that smelled of marijuana. In addition, Atteberry testified Heter (1) told Atteberry he was selling the marijuana to Casey for $1,500 more than Heter paid; and (2) planned to sell his portion of the split one pound in order to have money to fix his car.

The KBI agent testified that Starks was slumped down in the car seat and that Casey attempted to flee the residence.

There is a conflict between the statements of Starks and Casey, and the testimony of Atteberry. Looking at all the evidence, viewed in the light most favorable to the prosecution, the evidence is sufficient to cause a person of ordinary prudence and caution to entertain a reasonable belief that Starks and Casey willfully furthered the success of Heter's possession of the marijuana with intent to sell. The jury could find that Casey knowingly provided the money necessary for Heter to possess the marijuana with intent to sell and that Starks knowingly provided the transportation.

### Count II, Conspiracy to Sell Marijuana

K.S.A. 21-3302(1) provides: "A conspiracy is an agreement with another person to commit a crime or to assist to commit a crime. No person may be convicted of conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by him or by a co-conspirator."

The State contends that the trial court improperly weighed the evidence, finding it "too thin" to bind Starks over on count II. The State argues that Atteberry's testimony provides sufficient evidence that Starks was involved in the agreement between Casey and Heter to sell marijuana. Starks counters that the evidence was insufficient to support a finding of probable cause that Starks was involved in the agreement.

A review of the evidence indicates that Starks did not enter into an agreement to sell marijuana.

Atteberry testified that Heter told him Starks and Casey were in it together. Starks planned on purchasing some of the marijuana from Casey. There was no testimony concerning either the quantity Starks intended to purchase or what Starks intended to do with the marijuana after the purchase. There was no testimony that Starks knew what Casey intended to do with the marijuana. The only evidence of an agreement involving Starks relates to his intention to purchase an unknown quantity from Casey. The evidence is not sufficient to establish probable cause of an agreement to sell marijuana.

We affirm the trial court's dismissal of the count II charge against Starks for conspiracy to sell marijuana (K.S.A. 21-3302 and K.S.A. 1990 Supp. 65-4127b).

We reverse the trial court's dismissal of the count I charges against Starks and Casey for possession of marijuana with intent to sell within 1,000 feet of an elementary or secondary school (K.S.A. 1990 Supp. 65-4127b[e]).

Affirmed in part and reversed in part. The case is remanded with directions to reinstate the charges against Starks and Casey for possession of marijuana with intent to sell within 1,000 feet of an elementary or secondary school, to arraign them, and for further proceedings in conformity with this opinion.