**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOHN MARK HANNUM,

        Defendant - Appellant.

No. 02-3228
D.C. No. 00-CR-40118-02-SAC
(D. Kansas)

ORDER AND JUDGMENT    *

Before **SEYMOUR** , **HENRY** , and **LUCERO** , Circuit Judges.

After the district court denied his motion to suppress, the defendant John

Mark Hannum entered a conditional guilty plea to conspiring to manufacture

methamphetamine in violation of 21 U.S.C. § 846.  Mr. Hannum now appeals that

ruling.  We conclude that the challenged search arose out of the lawful

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

impoundment of a car driven by Mr. Hannum.  As a result, the district court did not err in denying Mr. Hannum's motion.[1]


I.  BACKGROUND

On November 2, 2000, Detective Scott Higgins, a sergeant with the Labette County Kansas Sheriff's Department, observed that a two-door Chrysler convertible driven by Mr. Hannum was not properly registered.[2]   Detective Higgins activated his emergency lights, and Mr. Hannum pulled into the parking lot of a convenience store.  A few days earlier, the Sheriff's office had been contacted by a confidential informant who had stated that Mr. Hannum's mobile home contained a methamphetamine laboratory.

In response to Detective Higgins's inquiries, Mr. Hannum declared that the car belonged to a woman named Tina Tollette and that he had no registration documents and no proof of insurance.  At the hearing on Mr. Hannum's motion to suppress, Detective Higgins explained that the confidential informant had stated that Mr. Hannum was living in a mobile home with his girlfriend Tina and another

---

[1]     After examining the record and the parties' briefs,  this panel has determined unanimously to honor the parties' request for a decision on the briefs. See Fed. R. App. P. 34(f).  Accordingly, we grant the parties' request to decide this case on the briefs.

[2]     According to Detective Higgins, the license plate number on the two-door Chrysler was   registered to a four-door Chrysler.

-2-

man. Detective Higgins stated that he assumed that the Tina Tollette to whom Mr. Hannum referred was the same "Tina" named by the confidential informant. However, he added that he "was unable to ever contact the owner of the vehicle as stated by Mr. Hannum." Rec. vol. III, at 25.

Based on the lack of proper registration and proof of insurance, Detective Higgins decided to impound Mr. Hannum's car and conduct an inventory search. At that point, a second officer, Detective Kelly Stammer, had arrived at the scene.

At Detective Higgins' request, Detective Stammer began photographing the car. Detective Stammer then asked Mr. Hannum if he could look in the trunk. Mr. Hannum agreed and tried unsuccessfully to open the trunk with his keys. Next, Detective Stammer asked if he could attempt to open the trunk, and Mr. Hannum again agreed. Detective Stammer succeeded, and the detectives found a shotgun and drug paraphernalia that tested positive for methamphetamine.

Subsequently, the detectives obtained a search warrant for Mr. Hannum's mobile home. They executed the warrant on the same day, discovering seventy-four grams of ephedrine/pseudoephedrine, baggies with white powder residue, and other items associated with the manufacture of methamphetamine.

After the grand jury indicted him, Mr. Hannum filed a motion to suppress the evidence discovered in his car and in the subsequent search of his mobile home. Mr. Hannum argued that the impoundment of his car was not authorized by

Kansas statutes and therefore violated the Fourth Amendment. He maintained that the detectives should have allowed the car to be driven away by the lawful owner.

The district court rejected Mr. Hannum's argument, finding that the impoundment was reasonable under the circumstances. The court reasoned that, after Detective Higgins discovered that Mr. Hannum did not have proper registration or proof of insurance, Mr. Hannum did not inquire about having Ms. Tina Tollette (the alleged rightful owner) or anyone else take custody of the vehicle. Also, the court observed, the detectives would not have been required to allow someone else to drive the car because, absent proper registration, it could not have been driven on public roads. Finally, the car could have been subjected to vandalism or theft if the detectives had left it in the convenience store parking lot. See Rec. vol. II doc. 85, at 30-31 (District Court Memorandum and Order, filed April 26, 2001). The district court also found, as an independent ground for denying the motion to suppress, that Mr. Hannum had consented to the search.

## II. DISCUSSION

On appeal, Mr. Hannum argues that the impoundment of his car was not authorized and that, as a result, the ensuing search was unreasonable and therefore violated the Fourth Amendment. In reviewing the denial of a motion to suppress, "we accept the district court's factual findings unless they are clearly erroneous, and we view the evidence in the light most favorable to the district court's determination." United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001). Credibility determinations, "and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." Id. (internal quotation marks omitted). However, we review de novo the ultimate determination of reasonableness under the Fourth Amendment. Id.

Generally, there are two sources of authority for the warrantless impoundment of stopped, parked, or abandoned vehicles: specific state (or local) motor vehicle laws, and the general interest in public safety recognized, as a matter of federal law, in South Dakota v. Opperman, 428 U.S. 364, 369 (1976) ("The [inherent] authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge") (plurality opinion). We have characterized this general interest in public safety as part of the "community-caretaking function" of police officers. See United States v. Hunnicutt, 135 F.3d 1345, 1351 (10th Cir. 1998).

Once a vehicle is impounded, law enforcement officers may conduct an inventory search if they act reasonably. See Opperman, 428 U.S. at 372. An inventory is reasonable if it is undertaken in good faith pursuant to standard police procedures. See id. at 376. The "inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990).

Here, Mr. Hannum challenges only the initial impoundment his vehicle. We therefore consider whether the impoundment comported with Kansas law and with the Labette County Sheriff's detectives' community caretaking function as a matter of federal law.

## A. Kansas law

Kansas courts have held that law enforcement officers may properly impound a vehicle if there is express statutory authorization to do so or if, even absent such authority, "there are 'reasonable grounds' for impoundment." State v. Teeter, 819 P.2d 651. 653 (Kan. 1991) (internal citation omitted). As part of this reasonableness inquiry, the courts have explained that there are certain situations in which impoundment is not justified:

If the owner, operator or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable [as in the instant case] or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reason justifying impoundment exists should the officers assume control over the vehicle.

Id. (internal quotation marks omitted).

On the other hand, the courts have provided specific examples of situations in which impoundment is justified:

Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the as in the case of forfeiture.

State v. Boster, 539 P.2d 294, 299 (Kan. 1975) (quoting State v. Singleton, 511

P.2d 1396 (Wash. App. 1973)), overruled on other grounds by State v. Fortune,

689 P.2d 1196 (Kan. 1984).

Invoking these examples, Mr. Hannum argues that Detectives Higgins and

Stammer did not have reasonable grounds to impound the car he was driving.  He

observes that once the detectives discovered that he lacked proper registration and

insurance, they did not ask him how he would like to dispose of the vehicle and

they did not attempt to contact Ms. Tollette (the asserted lawful owner)

themselves.  He adds that the car was lawfully parked in the convenience store lot

and was not obstructing traffic. It had not been in an accident and, at that point

(before the impoundment and inventory search), there was no need to retain the car

as evidence of a crime.  Moreover, "[i]t would have been easy for Ms. Tollete or

Mr. Hannum to register the car properly, locate the missing proof of insurance, and

drive the vehicle away the same day."  Aplt's Br. at 9-10.

Mr. Hannum reads the "reasonable grounds for impoundment" standard

much too narrowly, minimizing important concerns underlying Kansas statutes

requiring the proper registration and insuring of vehicles.  See Kan. Stat. Ann. §§

8-127(a) and 8-142 (registration); Kan Stat. § 40-3104 (proof of insurance).[3]  As

_____

[3]      Section 8-127(a) provides, in part, that "[e]very owner of a motor vehicle .
. . intended to be operated in this state . . . shall, before any such vehicle is
(continued...)

-8-

the government observes, because the car driven by Mr. Hannum on November 2, 2000 was not properly registered, it could not be lawfully driven on Kansas roads. See Kan. Stat. Ann. §§ 8-127(a), 8-142. Accordingly, the fact that lack of proper registration is not specifically listed as grounds for impoundment in the cases cited by Mr. Hannum does not render the detectives' decision to impound improper. Because the car driven by Mr. Hannum was not properly registered, the detectives had reasonable grounds to impound it. The impoundment thus comported with state law.[4]

---

[3](...continued)
operated in this state, apply for and obtain registration in this state." Section 8-142 provides that it is unlawful for any person "to operate, or for the owner . . . knowingly to permit the operation . . . of any vehicle . . . which is not registered or for which a certificate of title has not been issued or which does not have attached thereto and displayed thereon the license plate or plates assigned thereto."

Section 40-3104(b) requires owners of motor vehicles to obtain liability insurance and to display proof of that insurance when requested by a law enforcement officer.

[4]    Mr. Hannum cites no authority in support of his contention that the detectives were required to afford Mr. Hannum and Ms. Tollette the opportunity to properly register the car before impounding it.    See Aplt's Br. at 9-10. To impose such a restriction on law enforcement officers who discover an unregistered vehicle would substantially undermine the registration laws, and we too have found no authority supporting such a permissive view of these requirements.

## B. Community caretaking function

Independently of the provisions of Kansas law, we further conclude that the impoundment of the car driven by Mr. Hannum arose out of a proper exercise of the Labette County detective's community caretaking function. As the government has observed, this court has held that impoundment constitutes a proper exercise of that function when a motorist cannot produce proper registration or proof of insurance. See Hunnicutt, 135 F.3d at 1351 (holding that "officers properly impounded the vehicle in their community-caretaking function" when the defendant driver could not produce proper registration and no one else in the car could produce any verification of insurance).

We do note that our prior cases have concluded that certain circumstances do not justify impoundment. See, e.g, United States v. Ibarra, 955 F.2d 1404 (10th Cir. 1992) (affirming grant of motion to suppress when officers impounded an unattended vehicle that posed no public safety hazard); United States v. Pappas, 735 F.2d 1232 (10th Cir. 1984) (affirming district court's conclusion that impoundment and inventory search were unreasonable when a car was parked on private property). However, those cases are distinguishable, and they do not help Mr. Hannum here.

In Ibarra, the court applied a Wyoming statute that authorized impoundment upon a report that the vehicle had been stolen, that the person in charge of the

vehicle was unable to provide for its custody or removal, or if the person in control of the vehicle had been arrested. The district court made factual findings that none of these three circumstances were present, and we upheld these findings as not clearly erroneous. We did not consider the broad Kansas "reasonable grounds" standard for impoundment. Moreover, in Mr. Hannum's case the district court did not make factual findings supporting a conclusion that the impoundment was unreasonable. Finally, there is no indication in Ibarra that the car was not properly registered and insured.

Similarly in Pappas, the district court made factual findings that a friend of the defendant could have taken care of his car. Just as in Ibarra, there is no indication—as there is here—that the car was improperly registered.

## III. CONCLUSION

Accordingly, under both Kansas and federal law, the Labette County

detectives properly impounded the car driven by Mr. Hannum on November 2, 2000.  We therefore AFFIRM the district court's denial of Mr. Hannum's motion to suppress.[5]

Entered for the Court,


Robert H. Henry
Circuit Judge

---

[5]     In light of our conclusion that the impoundment of the car driven by Mr. Hannum was proper, we do not reach the issue of whether he consented to the search.